## SMITH *v.* UNITED STATES (No. 148).[1]

RELIQUIDATION ON ORDER OF BOARD FOLLOWED BY A NEW PROTEST.

Where an importer's protest against the inclusion of certain bottle charges in an assessed valuation had been sustained and a reliquidation by the collector ordered, the importer interposed a new protest with the collector, asserting his right to a new assessment on the contents themselves of the bottles and at a lower rate than that which had been originally fixed: *Held*, in the proceedings that ensued on reliquidation the collector made no "decision" from which an appeal would lie; he was acting ministerially, and the importer having failed within the time prescribed by law to protest against the original assessment as to the value of the contents of the bottles and to appeal therefrom, that assessment is *res adjudicata.*

United States Court of Customs Appeals, April 17, 1911.

TRANSFERRED from United States Circuit Court for Southern District of New York, G. A. 6919 (T. D. 29884).

[Affirmed.]

*B. A. Levett* for appellants.

*D. Frank Lloyd*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, BARBER, and DE VRIES, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This is an appeal from the Board of General Appraisers to the United States Circuit Court for the Southern District of New York, transferred to this court under the provisions of the act of August 5, 1909.

---

[1] Reported in T. D. 31527 (20 Treas. Dec., 805).

The decision of the Board of General Appraisers was rendered upon an agreed statement of facts. From this statement it appears that certain "preserved cherries in maraschino in glass," or "preserved cherries in glass in maraschino," were, during the months of August, September, and October, 1906, imported by James P. Smith & Co., of New York, at that port.

The glass in which the cherries were imported consisted of bottles. Duty was assessed upon the contents at the rate of 1 cent per pound and 35 per cent ad valorem under the provisions of paragraph 263 of the tariff act of 1897. Against this liquidation and assessment of duty on the cherries the importers neither filed a protest or notice of dissatisfaction claiming any different rate of duty or different classification of the cherries nor objected in any way to the assessment of duty upon the cherries.

Duty was assessed upon the bottles containing the cherries at the rate of 40 per cent ad valorem under the proviso to paragraph 99 of the tariff act of 1897, the provisions of which are here unimportant.

Wherever the invoices showed charges for corking, wiring, capping, labeling, casing, or other items incident to placing the merchandise in condition packed ready for shipment to the United States, the collector added such amount to the value of the bottles, which he assessed for duty at the rate of 40 per cent ad valorem.

The importers duly filed protests with the collector against this assessment of duty, claiming "the valuation of the bottles for the assessment of duty should be that of the bottles *per se* without the addition thereto of any charges whatever; *or in any event a portion of the charges which have been added to the value of the bottles per se for the assessment of duty applies only to their contents.*"

The board on February 29, 1908, Abstract 18406 (T. D. 28833), rendered decision, sustaining this protest and directed reliquidation, as follows:

(1) As to the filled bottles; the cost or value of the charges for corking, wiring, capping, labeling, casing, or other items incident to placing the merchandise in condition packed ready for shipment to the United States, shall not in anyway be added or apportioned to the value of the bottles, but that said bottles shall be assessed with duty at the specific or ad valorem rates prescribed by paragraph 99, tariff act of 1897, according to the value of the bottles *per se*, as thus determined.

(2) As to the contents of the bottles, if such contents are subject to an ad valorem rate of duty or a duty based upon or regulated in any manner by the value thereof, the cost or value of all such charges shall be included in the dutiable value of the contents; but that if the contents are not so subject to duty, then such cost or value shall not be liable to any duty. Reliquidation will be made accordingly. The protests are overruled on all other grounds.

It is further stipulated that upon the decision being transmitted to the collector he reliquidated the entries and—

In making his reliquidation, the collector did not include in the value of the bottles any charges for corking, wiring, capping, labeling, casing, or other items incident to placing the merchandise in condition packed ready for shipment to the United States;

but he added such sums to the value of the contents of the bottles, that is, to the said cherries in maraschino, thereby increasing the dutiable value of the said cherries. He made corresponding deductions from the value of the bottles, thereby decreasing the dutiable value of the bottles. The rate of duty on said cherries in maraschino was not changed in any way by the collector on reliquidation from the rate which had been originally assessed.

\*      \*      \*      \*      \*      \*      \*

(c) In the case of every one of the four entries in question, the total amount of duty found due on reliquidation was less than originally assessed, and refund was accordingly made to the importers in every instance.

It further appears from the record, as stipulated, that this reliquidation was made about the 1st of June, 1908, more than one year after the entries were originally liquidated by the collector. Within 10 days after the reliquidation made by the collector, pursuant to the decision of the Board of General Appraisers, the protests here under consideration were filed. These protests alleged that the cherries are properly dutiable at the rate of 2 cents per pound, or 25 cents per bushel, under paragraph 262, or at the rate of 2 cents per pound under paragraph 264 of the act, and allege—

We also protest against the payment of all duties not legally chargeable upon said importation.

The Board of General Appraisers held these protests untimely; and that inasmuch as the collector in the reliquidation had merely conformed with the mandate of the Board of General Appraisers his action was ministerial and not judicial, and, therefore, not the subject of appeal under the customs administrative act of 1890. That is the question here for decision.

Salient facts to be borne in mind in the consideration of these cases are that no protest was filed against the decision of 1906 of the collector, wherein the rate of duty and the classification of the merchandise was decided by the collector.

Section 14 of the customs administrative act of 1890, as amended, then provided:

Sec. 14. That the *decision* of the collector as to the rate and amount of duties chargeable upon imported merchandise, including all dutiable costs and charges, \*   \*   \*   *shall be final and conclusive against all persons interested therein,* unless the owner, importer, consignee, or agent of such merchandise, \*   \*   \*   *shall within ten days after,* but not before such ascertainment and liquidation of duties, \*   \*   \*   or within ten days after the payment of such fees, charges, and exactions, if dissatisfied with such decision, *give notice in writing to the collector.* \*   \*   \*

While this provision provides a method of appeal from the decision of the collector, it, at the same time, provides that the decision of the collector shall be final and conclusive against all persons as to the rate and amount of such duties and as to the propriety of such exactions, costs, and charges, in the absence of such appeal. It makes the decision of the collector as to these matters, and any of them, *res adjudicata,* unless appeal therefrom is taken in the time by the statute allowed.

The collector duly ascertained and decided the rate of duty applicable under the law to the contents of the bottles—the cherries. No appeal was taken from the decision of that matter by the collector. He likewise decided the rate of duty applicable to the bottles. The decision as to that matter was unchallenged. He also decided that certain charges and costs should be assessed against the bottles. The decision as to these matters was duly challenged. Not only was the decision of the collector as to the rate of duty applicable to the contents of the bottles—the cherries—not challenged, but the importer in his protest specifically alleged that certain of the costs and charges had been improperly and illegally laid against the bottles by the collector, and made alternative prayer in his protest that these should be laid against the contents of the bottles. On appeal to the Board of General Appraisers this protest was sustained in all these particulars.

The collector upon receipt of the mandate from the board strictly followed it. In so doing he not alone obeyed the mandate of the board, but he complied with allegations and prayer of the importers made in their protest.

The statute quoted allows an appeal from the *decision* of the collector in the particulars specified.

We think it clear that in carrying out the mandate of the board the collector made no "decision" within section 14 of the customs administrative act. The rate of duty applicable to the cherries having been previously ascertained by him, the mandate of the board prescribed precisely his actions and there was nothing for him to determine or decide. He simply and only applied, or did not apply, in each case as directed by the board the unquestioned invoice value of certain charges in a class of cases, the determination of which class he had previously decided. Had the collector changed his previous decision as to the classification of the cherries, or had he disobeyed the mandate of the board by adding charges to a class of cases not included within the mandate, or extended the same to parts of the invoice not the subject of the decision, he would have gone beyond the letter of the mandate and made *decision* which would be the proper subject of protest, and to question the validity of which these protests would have been timely if sufficient.

While the mandate of the board directs the collector to apply the charges according to classifications of the merchandise, that was a classification previously determined by him and from which no appeal had been taken.

Undoubtedly the classification of the cherries and the rate of duty applicable thereto could have been raised by the importer by protest in the first instance. Having failed to do so within 10 days after liquidation, that matter became *res adjudicata*.

By the protest filed the proper application of the costs and charges was raised, and having been decided by the board, if the importer was dissatisfied he should have appealed. That the proper application of these costs and charges was made an issue by the importer's protest is shown, and was expressly included within the terms of the decision of the board. If the importer was dissatisfied with that decision, unless estopped by his own allegations, he could have had that question decided upon appeal from the decision of the board. In the absence of such appeal the allegations of the protests and matters determined in that decision of the board are likewise *res adjudicata.*

The classification of the contents of the bottles having become final by failure of the importer to appeal, and the rate applicable to the bottles being likewise finally determined, the decision of the collector and the board as to the proper application of the dutiable costs and charges was the only undetermined issue affecting the amount of the duties. The decision of the board, which was based upon other finally determined facts, as set forth in the record, therefore determined the only remaining issuable fact as to the amount of the duties.

Section 14 of the customs administrative act in this particular states that upon appeal to the board "their decision, or that of a majority of them, shall be final and conclusive upon all persons interested therein," unless appeal is taken to the courts as provided by section 15 of the same act.

We are of the opinion—

1. That the action of the collector, in obedience to the mandate of the board, having strictly obeyed the same, was, under the circumstances of the case, purely ministerial and did not amount to a "decision" such as is contemplated by section 14 of the customs administrative act of 1890, against which protest would lie.

2. That the failure of appellant to protest in due time against the decision of the collector in 1906, classifying the contents of the bottles for dutiable purposes and applying thereto a *rate* of duty; and the failure of the appellant to appeal from the decision of the board deciding that certain costs and charges should be applied in the manner there held, which was a decision involving and determining the only remaining issuable fact as to the *amount* of the duties and fixing the basis thereof, rendered these decisions in each case *res adjudicata* as to all questions raised by those protests.

As both of these issues are fundamental to and their decision requires review and reversal to sustain this protest, the court is of the opinion appeal does not lie.

*Affirmed.*

MONTGOMERY, Presiding Judge, and HUNT, SMITH, and BARBER, Judges, concur.