UNITED STATES *v.* EDWARD M. POONS CO. OF KOBE, INC. (No. 3328) [1]

[1] T. D. 44451.

United States Court of Customs and Patent Appeals, December 1,.
1930

*Charles D. Lawrence,* Assistant Attorney General (*James R. Ryan,* special
attorney, of counsel), for the United States.
*Brooks & Brooks* (*Earnest F. A. Place* of counsel) for appellee.

[Oral argument October 6, 1930, by Mr. Lawrence and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT,.
Associate Judges

GARRETT, Judge, delivered the opinion of the court:

The issue in this case, in the final analysis, relates to the timeliness of
appellee's protest, which was sustained by the Customs Court, the
Government appealing.

The record in the case not being very full nor clear as to certain
procedure had in the Customs Court, and by the collector, upon some
phases of the controversy that seemed to bear upon the issue, and no
brief having been filed in behalf of appellee, this court, when the matter
was argued before us, suggested to counsel for the respective parties
the propriety of filing a summary of the facts, upon which they were in
agreement, that would clarify the question or questions to be deter-
mined. This was consented to by counsel and we have the summary
before us, and herewith quote same, except the introductory remarks
which are not material:

SUMMARY OF FACTS AS AGREED UPON BETWEEN COUNSEL AT THE ORAL ARGUMENT

1. The importer-appellee imported several cases of merchandise, the contents
of which were correctly described upon a regular consular invoice.

2. At the time of making entry, the customhouse brokers were instructed to
make a "split entry"—that is to say, two entries were to be made, (1) certain
designated cases were to be entered for immediate consumption, and (2) other
designated cases were to be entered to be put in bonded warehouse.

3. The making of the so-called split entry necessitated the making (by the
customhouse brokers) of an "extract invoice," that is to say, the consular invoice
was to be used for making the consumption entry, and the extract invoice (a
transcription of that portion of the consular invoice covering merchandise to be
entered for bonded warehouse) was to be used for making the warehouse entry.

4. In making the extract invoice, the items of merchandise which were con-
tained in cases numbered 7281 to 7285, inclusive, and which in fact consisted
of straw hats and which were so designated upon the consular invoice, were erro-

neously described upon the extract invoice as consisting of paper hats. This would seem to have been purely a clerical error in making the transcription.

5. The extract invoice also described the contents of certain other cases enumerated thereon as consisting of straw hats, which in fact they did.

6. The present appeal covers only the warehouse entry which was made with the use of the extract invoice.

7. The merchandise contained in cases 7281 to 7285, inclusive (erroneously described on the extract invoice as being paper hats), was entered as paper hats and the correct amount of duty for paper hats was tendered to the collector and accepted by him; the appraiser in his return to the collector assented to the erroneous invoice description; and in the liquidation of the entry the collector classified that merchandise as paper hats under the provisions of paragraph 1313, Tariff Act of 1922.

8. In the liquidation of the entry, the collector classified the hats appearing upon the extract invoice as straw hats at a rate of duty higher than that thought proper by the importer-appellee, against which classification and assessment was filed a protest, the terms of which were broad enough to cover any item upon the invoice which might have been shown at the trial of the protest to consist, in fact, of straw hats.

9. Said protest was duly docketed for trial by the United States Customs Court.

10. Said protest was submitted upon a stipulation between counsel which constituted an agreed statement of facts, the substance of which was that the items recited upon the extract invoice, which had been returned and assessed for duty under the provisions of paragraph 1406, Tariff Act of 1922, were the same as merchandise which had been the subject of a prior decision of the United States Customs Court. No reference in the stipulation was made to the merchandise which had been classified and assessed for duty under the provisions of paragraph 1313, Tariff Act of 1922.

11. The United States Customs Court sustained the protest. Its decision, judgment order, and mandate were to the effect that the protest was sustained (Abstract 7871) as to the items classified under the provisions of paragraph 1406, Tariff Act of 1922, and ordered a reliquidation as to such items, and specifically overruled the protest as to all other items.

12. The collector, in his reliquidation of the entry, to comply with the judgment order and mandate of the United States Customs Court, reclassified all of the items enumerated upon the extract invoice which had been classified and assessed under the provisions of paragraph 1406, Tariff Act of 1922. In other words, his reliquidation correctly satisfied the judgment order.

13. Against that reliquidation, the importer-appellee filed another protest which complained that said reliquidation was improper in that it did not reclassify the items of merchandise contained in cases 7281 to 7285, inclusive, which in fact consisted of hats of the same character as those reclassified by the reliquidation in pursuance to the mandate and judgment order of the United States Customs Court, notwithstanding the fact that they were not so described upon the invoice.

14. In transmitting the second protest to the United States Customs Court, the collector stated that his reliquidation was a correct compliance with the judgment order and mandate of the United States Customs Court issued upon the first protest, and that his reliquidation was not his voluntary act, but was made pursuant to the decision and judgment order of the United States Customs Court in the first protest, and that it only purported to comply with the terms of that judgment order.

15. The collector further stated that the facts alleged by the importer-appellee in the second protest, to wit, that the items upon the extract invoice enumerated as being contained in cases 7281 to 7285, inclusive, and described thereon as paper hats, were, in fact, Yeddo straw hats.

16. The second protest was duly docketed for trial by the United States Customs Court, and at the trial thereof, the collector's letter was offered and received in evidence.

17. The decision of the United States Customs Court, on the second protest, sustained it and held the protest to be valid for the reason that "A reliquidation, *for any reason*, vacates and is substituted for the original liquidation," and cited the case of *United States* v. *Parkhurst & Co. et al.*, 12 Ct. Cust. Appls. 370.

18. From the decision on the second protest, the Government filed the present appeal.

From the above stipulation it appears that the only items of merchandise which are here in issue are those which were originally contained in cases numbered 7281 to 7285, inclusive. Concededly the items consisted of straw hats and were so designated upon the consular invoice, but upon the "extract invoice" used in making their entry they were described as paper hats, and were so assessed for duty; and, according to item 7 of the stipulation, the duty, on this basis, "was tendered to the collector and accepted by him." ·

However, there were in the shipment certain other items besides those assessed as paper hats. These other items were entered as straw hats and they were classified by the collector under paragraph 1406 at the rate of duty there provided. Importer, contesting the correctness of this classification, thereupon made protest within the statutory time, as to these straw hats classified and assessed under paragraph 1406; and this protest, it is agreed, was broad enough in its terms "to cover any item upon the invoice" which, at the trial, might have been shown to consist, in fact, of straw hats. That is to say, if the importer, at the trial, had shown that those hats embraced in cases 7281 to 7285, which were assessed at 35 per centum under paragraph 1313 as paper hats, were, in fact, straw hats, its protest was sufficient, in its terms, to have placed the Customs Court in a position where the relief sought could have been granted, and classification made at 25 per centum under paragraph 1439, as claimed.

But such showing was not made. The contest was submitted upon a stipulation which agreed that such items *as had been assessed under paragraph 1406* were similar to merchandise that had been passed upon in some other case, and *no direct reference was made* in the stipulation to the merchandise *assessed under paragraph 1313*, and now at issue.

The Customs Court sustained the protest and *judgment* was rendered ordering a reliquidation as to the items that had been *classified under paragraph 1406*. This judgment "specifically overruled the protest as to all other items." Of necessity this included,

as overruled, those items, not specifically mentioned but broadly covered by the protest, which had been classified under paragraph 1313.

The collector reliquidated as the judgment directed. Naturally he did not reliquidate as to those items which had been classified under paragraph 1313. To have done so would have been violative of the judicial decree overruling the protests as to such items. He was, in effect, restrained by the judgment of the court from such reliquidation.

The collector's reliquidation was made June 6, 1929, the court's decree having been rendered January 29, 1929, Abstract 7871.

Thereupon importer filed a second protest, the one here in issue, specifically covering the items in cases 7281 to 7285, which had been assessed, upon entry, as paper hats, under paragraph 1313. This was filed June 21, 1929, more than 22 months after the original liquidation wherein they had been specifically classified, but within 60 days after the second liquidation.

The collector, answering, pointed out that the second protest was not filed within the statutory period of 60 days fixed by section 514 of the Tariff Act of 1922, and recited his compliance with the decree of the court, stating it not to have been a voluntary reliquidation but one in obedience to the judicial mandate.

Upon appeal the Customs Court sustained the protest, holding it to be valid, and quoted, as an expression of this court in *United States* v. *Parkhurst*, 12 Ct. Cust. Appls. 370, T. D. 40522, the words: "A reliquidation, *for any reason*, vacates and is substituted for the original liquidation." [Italics quoted.]

It should be here observed that the phrase "for any reason" immediately above quoted, does appear as part of a *headnote*, or *syllabus*, of the cited case; but it nowhere appears in the body of the opinion itself, nor in any other opinion of this or any other court, so far as our researches have extended.

In the *Parkhurst* case the immediate question before the court was whether a reliquidation made by the collector in conformity with directions by the Secretary of the Treasury was such a reliquidation by the collector himself as entitled the filing of a protest which otherwise would have been barred by the terms of the statute. We held the reliquidation to be the legal act of the collector; the law makes no provision for liquidation or reliquidation by any other administrative official. In the concluding portion of the opinion, which was by the late Judge Smith, the court said:

Whether the collector reliquidates *because of a protest of the importer or on order of the Secretary of the Treasury or because he believes the original liquidation to be incorrect*, the reliquidation vacates and is substituted for the collector's original liquidation. [Italics ours.]

This court went no further than the three reasons: (a) Protest of importer; (b) order of Secretary of the Treasury; (c) belief of collector himself. Obviously there is nothing in the opinion which justifies the use in the headnote of the phrase "for *any* reason." [Italics ours.]

It is conceivable that there might be a reliquidation by a collector, for some reason other than one of the three mentioned in the *Parkhurst* case opinion, which would furnish a legal basis for a protest. This we do not undertake to determine here, but we do not see how, upon any theory, it properly can be held that a reliquidation in obedience to *and in conformity with* a decree rendered by a court clothed with jurisdiction of the subject matter constitutes such a basis.

If it does, of what value is a court adjudication? In dealing with matters such as that at bar, the function of the Customs Court and of this court is not administrative, but judicial; their determinations are not the acts of an administrative board, but are judgments of judicial tribunals, binding as legal decrees.

When, therefore, the Customs Court, on January 29, 1929, adjudged the protest *sustained* as to the items which had been assessed under paragraph 1406 and ordered a reliquidation upon these, it was a judgment which bound the collector and all other parties to the controversy. Equally binding was, that portion of the judgment which *overruled* the protest in all other respects. Appellee, of course, might have then appealed, but it could no longer proceed by protesting the collector's action, that action being admittedly in strict conformity with the judicial decree. The collector's act thereunder was not one involving discretion on his part, either actual or by legal presumption, but was a merely clerical or ministerial act complying with a judicial mandate. The collector made no "decision"; the decision was made for him. It was not made by another administrative officer of the Government, as the Secretary of the Treasury, but by a court; it was not an administrative order, but a court decree.

*Smith* v. *United States*, 1 Ct. Cust. Appls. 489, T. D. 31527, was quite analogous to the case at bar, and the decision in the *Smith* case was in line with numerous decisions of different United States courts rendered prior thereto. *Vide Stern et al* v. *United States*, 77 Fed. 607; *Wetstein* v. *United States*, G. A. 6200, T. D. 26848, 10 Treas. Dec. 531 (1905); *Downing & Co.* v. *United States*, G. A. 6408, T. D. 27538, 12 Treas. Dec. 144, and cases therein cited.

If the merchandise here involved was not covered by the original protest, manifestly the second protest could not be entertained, because it was not filed within the statutory time. Since it was concededly covered, under the broad terms of the original protest, obviously this suit is the same in substance as that heard and determined by the court below in Abstract 7871, *supra*. The parties, the mer-

chandise and the cases are the same. The issue is, therefore, *res adjudicata.* *United States* v. *Vincent De Messimy,* 16 Ct. Cust. Appls. 150, T. D. 42781, and cases therein cited.

The judgment rendered at the former trial placed the matter beyond any remedy by way of protest, and the Customs Court (apparently misled by the error in the head note of the *Parkhurst* case, *supra*) itself fell into error in sustaining the protest. It should have been dismissed.

Accordingly the judgment of the Customs Court is *reversed* and the cause is *remanded* for further proceedings not inconsistent herewith.